**M. C. HOLLIDAY, Petitioner,**

v.

**TODD SHIPYARDS CORPORATION, The Travelers Insurance Company, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 80–1507.

United States Court of Appeals, Fifth Circuit. Unit A

Aug. 28, 1981.

James B. Eaton, Houston, Tex., for petitioner.

G. Wesley Urquhart, Houston, Tex., for Todd Shipyards et al.

Marianne D. Smith, Div. of Employee Benefits, Washington, D. C., for respondents.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS,* District Judge.

GEE, Circuit Judge:

Appellant was seriously injured in the course of his employment and subsequently sought benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1976) ("Act"). His employer, Todd Shipyards Corporation, and its carrier, Travelers Insurance Company, commenced payment of temporary total disability benefits. The case was tried before an administrative law judge ("ALJ"), who determined that appellant was temporarily totally disabled from May 30, 1975, the day after he sustained the injury, to February 1, 1978, the date he attained maximum medical recovery, and that he was permanently totally disabled thereafter. The Benefits Review Board ("BRB") affirmed the ALJ's decision. In brief and oral argument before this court on March 19, 1981, the appellant

* District Judge of the Western District of Texas, sitting by designation.

sought to have the date of his permanent total disability made retroactive to the date of his injury, some two years and eight months earlier. Appellant's request was made in order to obtain certain annual inflation adjustments in his rate of permanent total disability compensation under section 10(f) of the Act, 33 U.S.C. § 910(f). Under that section, inflation adjustments to benefit levels are available only for claimants who are permanently totally disabled. The appellant challenged the administrative rule relied upon by the ALJ and the BRB by which a total disability becomes permanent only when maximum medical improvement is attained. At oral argument appellee, the director of the Office of Workers' Compensation Programs, United States Department of Labor, supported the appellant's entitlement to section 10(f) adjustments but contended that appellant's *method* for obtaining those adjustments was incorrect under the Act. Neither the appellant's employer, Todd Shipyards, nor the employer's carrier, Travelers, participated in the appeal before this court or before the BRB. At the suggestion of this court, the parties produced a "Proposal for Determining Permanent Total Disability under the Longshoremen's and Harbor Workers' Compensation Act," which is appended to this opinion. We agree with and adopt the director's proposed alternative method for computing permanent total disability compensation, and we remand to the ALJ for computation of the correct compensation rate in accordance with the parties' proposal.

An issue remaining before this court is appellant's counsel's motion for attorneys' fees. Counsel argues that he is entitled to attorneys' fees under section 28 of the Act, 33 U.S.C. § 928, because counsel was "successful in his appeal against the defendants, Benefits and Review Board, the U.S. Department of Labor, Todd Shipyard and Travelers Insurance Company." In the alternative, counsel argues that he is entitled to be paid attorneys' fees from the special fund authorized by section 44 of the Act, 33 U.S.C. § 944.

At the outset, we note that counsel's request suffers from certain irregularities. Counsel requests a fee award extending to attorney services before the BRB. As we recently pointed out, however, attorneys' fees for services relating to matters before the BRB "must be set in the first instance by the Board and not by this court." *Hole v. Miami Shipyards Corp.*, 640 F.2d 769, 773 (5th Cir. 1981). This court has stated that it has "neither the authority nor the competence" to ascertain what fees should have been awarded by the BRB. "The statute, in our view, intends each body—the hearing examiner, the Board, and the reviewing court—separately to assess the worth of the claimant's representation before it." *Ayers Steamship Co. v. Bryant*, 544 F.2d 812, 814 (5th Cir. 1977). In addition, counsel's motion contains mathematical as well as legal errors.[1] Finally, counsel's petition is not a complete statement of the extent and char-

---

1. Counsel's attorneys' fees petition contains the following summary of time spent:

| Date | Hours | Action |
| --- | --- | --- |
| | 25 | Appeal to Board of Benefits & Review |
| March 5, 1980 | 4 | Briefing |
| March 6, 1980 | 4 | Briefing |
| April 22, 1980 | 8 | Briefing |
| April 23, 1980 | 8 | Briefing |
| May 12, 1980 | 2 | Briefing |
| May 13, 1980 | 4 | Briefing |
| May 14, 1980 | 1 | Briefing |
| June 7, 1980 | 5 | Briefing |
| June 8, 1980 | 4 | Briefing |
| June 9, 1980 | 3 | Briefing |
| June 10, 1980 | 2 | Briefing |
| August 1980 | 10 | Reply Brief |
| | 8 | Filed briefs, printed, etc. |
| March 13, 1981 | 4 | Briefing |
| March 16, 1981 | 8 | Briefing |

acter of necessary work done. While the Act does not establish standards for the courts of appeals to follow in the award of attorneys' fees, this court has followed the lead of the Third Circuit in accepting as guidelines those regulations followed by the BRB. *See* 20 C.F.R. § 802.203 (1980); *Atlantic & Gulf Stevedores, Inc. v. Director, OWCP,* 542 F.2d 602, 610 (3d Cir. 1976); *Ayers Steamship Co. v. Bryant,* 544 F.2d at 814. Counsel's petition does not specify the professional status of the persons doing each category of work; indeed, the character of the work done is scarcely particularized at all. Are we to assume that an attorney commanding an hourly rate of $150 did *all* of the work involved, including the printing or reproducing of briefs? This is particularly troubling here, given the arguably inflated nature of counsel's fee request.[2] Counsel should bear in mind that, to be approved, fees should be "reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the complexity of the legal issues involved, [and] the amount of benefits awarded...." 20 C.F.R. § 802.-203(d). These irregularities, however, need not trouble us further, given our determination that counsel is not entitled to attorneys' fees from either the employer under section 28 of the Act or from the United States government under the special fund.

Attorneys' fees cannot be assessed against the employer or carrier in this case. Section 28 does not provide for attorneys' fee awards in every case in which the claimant is successful.[3] In *Hole v. Miami Ship-*

| Date | Hours | Action | |
|---|---|---|---|
| March 18, 1981 | 4 | Briefing | |
| March 19, 1981 | 8 | Argument | |
| | | Total Hours | 109 x $150.00 pr hr. |
| | | Total Amount | $16,459.00 |
| Postage for certified mail, etc. | | | $ 10.00 |
| Copy costs for briefs, etc. | | | $ 56.00 |
| Travel expenses to New Orleans for appeal: | | | $100.00 |
| Flight $50.00 | | | |
| Hotel $40.00 | | | |
| Cab $10.00 | | | |
| $100.00 | | | |
| | | Total costs | $166.00 |
| | | Total attorney's hours | 16,459.00 |
| | | Total costs | 166.00 |
| | | Total amount due | 16,625.00 |

Both the addition and multiplication are obviously incorrect. Presumably, counsel intends to request $16,966 and not $16,625 in total fees.

2. We have serious doubts about whether 79 hours of briefing at $150 per hour is a reasonable fee request for an opening brief of seven pages with five cited authorities and a reply brief of three pages citing two. If brevity be the soul of wit, $11,850 has purchased a great deal of it here. *Cf. Director v. Black Diamond Coal Mining Co.,* 598 F.2d 945, 953–54 (5th Cir. 1979) (attorney fee request not sufficiently detailed; court dubious of whether brief worth 20 hours of attorney time).

3. Section 28 of the Act, 33 U.S.C. § 928, provides as follows:

(a) If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this Act, and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of the claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be which shall be paid directly by the employer or

*yards Co.,* 640 F.2d at 774, this court clarified under what circumstances an employer or carrier may be responsible for attorneys' fees:

> From this comprehensive scheme regulating attorney's fees we discern a congressional intent that *when an employer contests its liability for compensation in whole or in part and the claimant is ultimately successful,* the employer and not the claimant must pay the claimant's attorney's fees *for services necessary to that success* "regardless of how close a case might be which is litigated but finally lost by [the employer]."

(emphasis added and citation omitted). As we pointed out in *Savannah Machine & Shipyard Co. v. Director, OWCP,* 642 F.2d 887, 889 (5th Cir. 1981), section 28 authorizes attorneys' fees in two situations only: (a) where the employer refuses to pay any compensation for a work-related injury, and (b) where the employer tenders partial compensation but refuses to pay the total amount claimed. In either case, the claimant must, of course, obtain the services of an attorney to prosecute his claim successfully. Neither situation exists here. The employer and carrier were actively involved only before the ALJ, and the ALJ awarded attorneys' fees against them. Neither the employer nor its carrier participated in the claimant's appeal before the BRB or before this court. They have not contested the claim here or there within the meaning of sections 28(a) or (b).

Counsel's claim for fees to be assessed against the special fund also fails for the reasons elaborated by the Ninth Circuit in *Director, OWCP v. Robertson,* 625 F.2d 873 (9th Cir. 1980). This circuit has not heretofore passed on the question whether the special fund may ever be required to pay attorneys' fees. *Savannah Machines & Shipyard Co.,* 642 F.2d at 890 n.8. After consideration, we are convinced that the Ninth Circuit has given a fair and reasonable interpretation to the question, and we adopt its opinion in *Robertson.*

Under the American Rule, adopted by the federal courts, even successful litigants cannot recover attorneys' fees unless a statute imposes liability or some other exceptional circumstance warrants a departure from the rule. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 730 (5th Cir. 1980). As the Ninth Circuit pointed out in *Robertson,* 625 F.2d at 876–77, the statute does not provide for the payment of attorneys' fees from the special fund. Here, as in the *Robertson* case, none of the established nonstatutory exceptions [4] to the American Rule are applicable, and there is no contract between the parties to enforce.

The statutory exceptions to the American rule are, as the Supreme Court affirmed in *Alyeska,* "specific and explicit provisions

---

carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

(b) If the employer or carrier pays or tenders payment of compensation without an award pursuant to section 14(a) and (b) of this Act, and thereafter a controversy develops over the amount of additional compensation, ... the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy.... If the employee refuses to accept such payment or tender of compensation, and thereafter utilizes services of an attorney at law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee ... shall be awarded

in addition to the amount of compensation....

4. The nonstatutory exceptions to the American Rule are limited to the common fund theory (*Mills v. Electric Street Lite Corp.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)); *but see* dissent of Justice Black, 396 U.S. at 397, 90 S.Ct. at 628), situations where a party has willfully violated a court order (*Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719 (1923)), and cases of fraudulent, groundless, oppressive, or vexatious conduct (*F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). *Alyeska* put an end to the "private attorneys general" theory for awarding attorneys' fees. Appellant does not claim that any of these exceptions are applicable here.

for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." 421 U.S. at 260, 95 S.Ct. at 1623. There is no specific and explicit provision for the assessment of attorneys' fees against the special fund under the Act. The list of expressly authorized payments in section 44(j) of the Act, 33 U.S.C. § 944(j), does not include attorneys' fees and makes no mention of section 28.[5]

The Ninth Circuit also drew an important distinction between cases arising under the Longshoremen's Act and the Black Lung Benefits Act, 30 U.S.C. §§ 901–945:

> Several circuits have held the Black Lung Disability Trust Fund liable for attorney's fees incurred by claimants of black lung benefits whose last coal mine employment terminated prior to 1970. The statute which created that fund, the Federal Coal Mine Health & Safety Act of 1969, 30 U.S.C. § 901 et seq., was amended in 1978, and § 28(a) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 928(a), ... was incorporated by reference. *A separate section was added, however, providing that references to the employer in the Longshoremen's Act are to be considered to refer to the trustees of the black lung fund.* Those circuits which have considered the issue have held that these provisions constitute specific statutory authorization for the award of counsel fees from the fund. Since the trustees of

the black lung fund are substituted for the employers in § 28(a) of the Longshoremen's Act, the black lung fund is liable for counsel fees if the conditions precedent to liability set out in § 28(a), i. e., the employer controverts the existence [or] extent [of] liability and the claimant utilizes an attorney in the successful prosecution of his claim, are satisfied. *Congress found it necessary to provide for this substitution in order to provide that counsel fees be paid out of the black lung fund; it legislated no such substitution for the Longshoremen's Act, and we will not judicially mandate that such a substitution be made in this case.*

*Robertson,* 625 F.2d at 877 n.6 (emphasis added). *See also Director v. Black Diamond Coal Mining Co.,* 598 F.2d 945 (5th Cir. 1979). As the director argues in his brief, the fact that the Black Lung Benefits Act was specifically amended to provide for the award of attorneys' fees from the Black Lung Disability Trust Fund where there was no employer involved is further evidence that Congress did not intend the special fund here to be liable for attorneys' fees under section 28 of the Longshoremen's Act.

Appellant's motion for attorneys' fees essentially complains that it is unfair to burden him with the cost of this appeal. As in *Robertson,* appellant's real dispute is with the American Rule prohibiting the recovery of attorneys' fees by a successful litigant.[6]

---

5. Section 44 provides:

    (a) There is hereby established in the Treasury of the United States a special fund. Such fund shall be administered by the Secretary. The Treasurer of the United States shall be the custodian of such fund, and all moneys and securities in such fund shall be held in trust by such Treasurer and shall not be money or property of the United States.
    . . . .
    (j) The proceeds of this fund shall be available for payments:
    (1) Pursuant to sections 10 and 11 with respect to initial and subsequent annual adjustments in compensation for total permanent disability or death which occurred prior to the effective date of this subsection.
    (2) Under section 8(f) and (g), under section 18(b), and under section 39(c).

    (3) To repay the sums deposited in the fund pursuant to subsection (d).
    (4) To defray the expense of making examinations as provided in section 7.
    The special fund is the source of compensation payments when it has been determined, as in the instant case, that section 8(f) of the Act, 33 U.S.C. § 908(f), the Act's second injury provision, is applicable to limit the employer's compensation liability.

6. While there are certain valid policy reasons for permitting claimants to recover their attorneys' fees when they prevail in a dispute with the administrator of the special fund, the director submits and we agree that these reasons are no more persuasive than the arguments favoring the award of attorneys' fees to prevailing parties in other types of litigation. Although all other major nations provide for

Like the Ninth Circuit, we too are restrained from forging a new exception to the American Rule by the Supreme Court's conclusion in *Alyeska*, 421 U.S. at 262, 95 S.Ct. at 1624: "[I]t is apparent that the circumstances under which attorney's fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine." (footnote omitted).

Congress has spoken on the subject of attorneys' fee awards under the Act. Only the employer or carrier, and they only in certain cases, are made liable for such fees by section 28; and section 44 does not include attorneys' fees in its list of authorized disbursements from the fund. Congress has not provided that the special fund should provide a convenient "deep pocket" in those cases where an award of attorneys' fees is otherwise unavailable under section 28.[7] For this reason, we must deny appellant's request for attorneys' fees.

REMANDED.

## APPENDIX

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 80–1507

M. C. HOLLIDAY,                                                                      Petitioner,

versus

TODD SHIPYARDS CORPORATION
AND TRAVELERS INSURANCE CO.
AND
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR,

Respondents.

Proposal for Determining Permanent Total
Disability Compensation Under the
*Longshoremen's and Harbor Workers' Compensation Act*

The Director submits that there are three methods of determining a claimant's compensation rate for permanent total disability under the Act. The just method favored by the petitioner would have the claimant receive compensation for temporary total disability until it became clear he was permanently totally disabled. At that time a

awards of attorneys' fees to prevailing parties, *see, e. g., Recent Developments in Attorneys' Fees*, Vand.L.J. 685, 720 n.239 (1976), the Supreme Court recognized as early as 1796 that "the general practice of the United States is in oposition [sic] to [fee shifting] and even if that practice were not strictly correct in principle, it is entitled to the respect of the court, until it is changed, or modified by statute." *Arcambel v. Wiseman*, 3 U.S. (Dall) 306, 1 L.Ed. 613 (1796). And, while disfavored outside of the United States, the American Rule is not without supporting policy arguments. As Justice Marshall pointed out in *F. D. Rich Co. v. U. S. Industrial Labor Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974), a contrary rule might unjustly discourage the poor from instituting actions to vindicate their rights as well as further involve the courts in the difficulties of proof inherent in determining the reasonableness of attorneys' fees. "Finally, there is the possibility of a threat being posed to the principle of independent advocacy by having the earnings of the attorney flow from the pen of the judge before whom he argues." *Id.*

7. Indeed, Congress acknowledged that the responsibility for fees would occasionally fall on claimants since, in section 28(c) of the Act, 33 U.S.C. § 928(c), it provided that approved attorneys' fees, "in cases in which the obligation to pay the fee is upon the claimant, may be made a lien upon the compensation due under an award. . . ."

clt. would be considered to be permanently totally disabled *as of the date of injury* and would be compensated accordingly. In other words, from May 30, 1975, to September 30, 1975, claimant would receive temporary total disability compensation at the rate of $203.00/week (⅔ of his average weekly wage under § 3 [33] U.S.C. § 908(b)). On October 1, 1975, he would receive the annual adjustment under § 910(f) of approximately 7%. The same would occur on October 1 of 1976 and 1977, bringing claimant's compensation rate up to approximately $246.00/week. In this way claimant receives three years worth of § 910(f) adjustments despite the fact he was not permanently totally disabled under the Act and therefore not yet *entitled* to these adjustments.

The basic flaw in claimant's argument is that it is contrary to both the intent and plain language of the Longshoremen's Act. The statute specifically provides for a period of *unadjusted* compensation while a condition is stabilizing, *i. e.,* during periods of temporary disability. Once a determination can be made that a claimant is permanently totally disabled he becomes entitled to the annual adjustments under § 910(f). Beyond that time he is not yet *entitled* to the § 910(f) adjustments because they apply only to permanent total disability and death benefits.

Under the second method of computing permanent total disability benefits the claimant receives temporary total disability benefits from May 30, 1975, to February 1, 1978, when he was determined to be permanently totally disabled. As of February 2, 1978, his compensation rate for permanent total disability would be based on his initial compensation rate of $203.00/week. This alternative the Director agrees is both contrary to and frustrates the purpose of § 910(f) and the claimant would begin his compensation rate for permanent total disability approximately $46.00/week short as claimant alleges.

There is a third method of computing the compensation as was discussed in oral argument this morning. Under this alternative the claimant receives temporary total disability compensation without adjustment from May 30, 1975, to February 1, 1978, the date his permanent total disability was determined. When the compensation rate changes from temporary total to permanent total disability as of February 2, 1978, the compensation rate for permanent total disability should include the *intervening percentage increases* under § 910(f). In other words, on the date the compensation rate changes to permanent total disability compensation, the rate would be at approximately $246.00/week instead of $203.00/week.

For the past 54 years under the Longshoremen's Act disability has been considered to be temporary until a claimant either receives and returns to work or becomes permanently disabled. This is the basic compensation scheme set forth by Congress and it has been applied in this manner both judicially and administratively.

Keeping this basic compensation scheme in mind, the Director submits that the third alternative is more in keeping with Congressional intent and is consistent with the way Sections 908(a) and 908(b) of the Act have been construed and applied and also serves the purpose of § 910(f).

If this Court agrees with the Director's proposed alternative computation of permanent total disability compensation as it seemed at oral argument, then the Director submits that this Court need only remand the case to the Administrative Law Judge with instructions to carry out the ministerial junction of computing the compensation rate as of February 2, 1978, including the intervening percentage increases under § 910(f).

Respectfully submitted,

Marianne Demetral Smith

Attorney for the Director, Office

of Workers' Compensation Programs

U.S. Department of Labor

Frances Perkins Building

200 Constitution Ave., N.W.

Washington, DC 20210

(202) 357–0462

Signature as Approving

/s/ James B. Eaton
Attorney for Appellant

Prepared with the mutual cooperation of government and claimant's attorneys.

/s/ James B. Eaton
Attorney for Appellant