672 F.2d 847
 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Petitioner,
v.
ALABAMA DRY DOCK & SHIPBUILDING COMPANY and Beatrice T.
Waganer, Respondents.
 No. 80-9031.
 United States Court of Appeals,
Eleventh Circuit.
 April 5, 1982.
 
 Mark C. Walters, U.S. Dept. of Labor, Washington, D.C., for petitioner.
 Gaillard, Little & Hume, Christopher G. Hume, III, Mobile, Ala., for Waganer.
 Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, W. Boyd Reeves, Mobile, Ala., for Ala. Dry Dock & Shipbuilding Co.
 Petition for Review of an Order of the Benefits Review Board.
 Before TUTTLE, HENDERSON and CLARK, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal from an order of the Benefits Review Board (BRB) of the Office of Workers' Compensation Programs (OWCP), Department of Labor. Petitioner, Director of OWCP, challenges the BRB's award of respondent's attorney's fee as assessed against a special fund set up pursuant to the Longshoremen's and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C.A. § 944 (1978). For the reasons set out in the opinion below, we must reverse the BRB's award against the special fund and remand the issue of whether the respondent employer is liable under the statute for the claimant's attorney's fee.
 
 I.
 
 2
 On January 14, 1971, L. P. Waganer was killed in a job-related accident while working aboard the vessel, the S.S. Maiden Creek. Waganer was employed with Alabama Dry Dock & Shipbuilding Company (ADDSCO). ADDSCO had been hired by Sea-land Service, Inc., the owner of the S.S. Maiden Creek, to do some repair work on the vessel.
 
 
 3
 Pursuant to provisions of the LHWCA as they existed before 1972, immediately following the accident Mrs. Waganer began receiving death benefits from ADDSCO in the amount of $36.75 per week. See 33 U.S.C.A. § 909(b), (e) (1970 ed.). In 1972, Congress amended the LHWCA to increase the death benefits. See 33 U.S.C.A. § 910(h)(1) (1978). Instead of requiring the employer to pay the additional benefits to persons such as Mrs. Waganer who began receiving payments prior to the amendments, Congress set up a special fund to cover the increase in benefits. See 33 U.S.C.A. § 944(j)(1) (1978). In accordance with these provisions, ADDSCO began paying Mrs. Waganer both her pre-1972 weekly benefits and the benefit adjustments, periodically filing claims with the OWCP for reimbursement from the special fund for the adjustment payments.
 
 
 4
 Mrs. Waganer continued to receive the adjusted weekly benefits until the summer of 1974. Having previously filed a third-party lawsuit against the owner of the vessel, Sea-land, Inc., Mrs. Waganer received a lump sum settlement award in June of 1974 in the amount of $13,572.70. At this time ADDSCO discontinued all payments of Mrs. Waganer's weekly death benefits, including the post-1972 adjustment benefits for which it would have been reimbursed out of the special fund. ADDSCO's right to take this action was premised on section 33 of the LHWCA, which in effect authorizes employers to offset payment of weekly death benefits against a third party settlement award by discontinuing weekly payments for a period during which time the settlement amount would have been paid out. See 33 U.S.C.A. § 933 (1978). Apparently as a part of the settlement arrangement, Mrs. Waganer received a letter from ADDSCO[1] specifically indicating the exact terms of the set-off arrangement. In this letter, ADDSCO stated to Mrs. Waganer that weekly death benefit payments would be suspended: "until such time, if you are then still living, the amount of future benefits which would have been payable to you under said Act (the LHWCA) equal the sum of $14,000, at which time you will begin receiving such benefits as shall therein be due and payable under said Act."
 
 
 5
 The issue arose whether ADDSCO would take credit for the full settlement amount in determining when to resume the weekly payments, or whether it would take credit only for that portion of the settlement equal to the portion of weekly benefits which it paid out of "its own pocket" to Mrs. Waganer, i.e., $36.75 per week. Under the former arrangement, ADDSCO would resume weekly payments in the summer of 1981, whereas under the latter the start-up date would have been some time in 1977. ADDSCO, of course, asserted that it could take credit for the full amount, and Mrs. Waganer requested a formal hearing before an administrative law judge. The ALJ held a hearing on September 27, 1978, and issued a rather ambiguous order as amended on May 24, 1979. The ALJ's ruling on the issue of whether ADDSCO could take credit for the full settlement amount is unclear; however, the ALJ did make an award of Mrs. Waganer's attorney's fee to be paid out of the special fund.
 
 
 6
 ADDSCO appealed the order to the Benefits Review Board (BRB) of the OWCP. Not having been involved in the proceedings prior to this time, the Director of OWCP intervened at this point and also appealed the ALJ's order to the BRB.[2] On October 17, 1980, the BRB filed its decision, holding that the settlement award should have been credited against both the special fund and ADDSCO's weekly payments, fixing the start-up date for full weekly payments on September 28, 1977. The Board also held, however, that ADDSCO did not have to resume its payments until July, 1981, as if it could credit the full settlement amount against its own weekly payments. To cover Mrs. Waganer's benefits during the intervening period between 1977 and 1981, the Board ordered the special fund to make the necessary payments in full.
 
 
 7
 In addition the Board awarded Mrs. Waganer's attorney's fee to be paid out of the special fund sources. Despite a lack of statutory authority for such an order, the Board justified its determination on "the unique circumstances of this case in which both claimant and employer have been successful in prosecution of their claims, and the special fund has been found liable for the accrued but unpaid benefits due." Orders of BRB, Nos. 79-379 & 79-379A, July 23, 1980. The director of OWCP filed this appeal, and both ADDSCO and Mrs. Waganer are respondent parties to the case.
 
 II.
 
 8
 The petitioner, Director of OWCP, argues that the special fund must not be held liable for attorney's fees. Petitioner notes that the LHWCA contains no statutory authorization for such fees to be paid out of the fund. In addition he argues that none of the exceptions to the American Rule regarding attorney's fees applies to the present case. Moreover, the petitioner cites two recent cases in which the court specifically held that attorney's fees could not be assessed against the special fund. See Director, OWCP v. Robertson, 625 F.2d 873 (9th Cir. 1980); Holliday v. Todd Shipyards Corp., 654 F.2d 415 (5th Cir. 1981). The petitioner also argues in the alternative that the employer, ADDSCO, is the proper party against which to assess the claimant's attorney's fee. He asserts that because the original dispute was between the employer and the claimant, and the employer actively contested Mrs. Waganer's claims throughout the proceedings, the LHWCA authorized an award of claimant's attorney's fee against the employer ADDSCO. See 33 U.S.C.A. § 928 (1978).
 
 
 9
 ADDSCO argues that they should not be held liable for fees in this case. They argue that the Director was the chief cause of the delay in the proceedings and is thus responsible for driving up the costs of handling Mrs. Waganer's claims. They also argue that under the provision in the LHWCA concerning attorney's fees, they are not liable for such fees. They assert that because they effectively got what they wanted, the statute does not authorize an award against them.
 
 III.
 
 10
 The issue of awarding attorney's fees to be paid out of the special fund has already been decided by a circuit court. In Holliday v. Todd Shipyards Corp., 654 F.2d 415 (5th Cir. 1981), the Fifth Circuit Court of Appeals held that the LHWCA does not authorize the award of fees against the special fund. Lacking any express statutory authority, the court held that the American Rule regarding attorney's fees prohibits an award in cases such as the one before us. In all pertinent aspects, the Holliday case and the case before us are indistinguishable, and thus we are bound by this established precedent.[3]
 
 
 11
 In the alternative, we are asked to find the employer ADDSCO liable for the claimant's attorney's fee. The majority opinion in the BRB holding below did not address the question of whether the applicable statute provided for such an award in the case before us. Rather than interpret the statute in the first instance, we find the most prudent course to be to remand the case to the BRB for the initial determination whether the statute makes the employer liable for the attorney's fee.
 
 
 12
 REVERSED AND REMANDED.
 
 
 
 [1]
 During the course of the litigation of the third-party suit against Sea-land, ADDSCO intervened and assumed the defense of the action pursuant to an indemnification agreement with Sea-land
 
 
 [2]
 In fact the parties had previously requested the director to settle their dispute. In a letter dated August 31, 1977, the Director suggested that the third-party settlement award be credited only against ADDSCO's weekly benefit payments, and that on July 3, 1981, when ADDSCO's payments would resume, the special fund sources would pay to Mrs. Waganer the benefit adjustments in a lump sum retroactive to the date of settlement in 1974. Apparently at least one of the parties, presumably Mrs. Waganer, did not find this proposal satisfactory
 
 
 [3]
 Pursuant to the principle set out by this Court en banc in Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981), we are bound by the precedents in all Fifth Circuit cases decided prior to October 1, 1981. The Holliday case was decided in August of 1981 and is thus binding on our Court