Albert C. BOWEN, Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Alaska Interstate Company; Aetna Casualty and Surety Company, Respondents.**

No. 89–70143.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 9, 1990.*

Decided Aug. 24, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Nathaniel I. Spiller, Sr. Appellate Atty., U.S. Dept. of Labor, Washington, D.C., for respondents.

Before WRIGHT, TANG and CANBY, Circuit Judges.

CANBY, Circuit Judge:

This case requires us to consider whether, under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA" or "Act"), a claimant who was classified as temporarily totally disabled and later placed on permanent total disability is entitled to the cost-of-living increases that occurred during the period of his temporary disability. Petitioner Albert C. Bowen appeals a Benefits Review Board ("BRB" or "Board") order denying him such cost-of-living adjustments. We affirm.

## I. FACTS

On October 1, 1973, Bowen, a pile driver foreman for the Alaska Interstate Company, sustained a disabling injury when struck by a clump of clay dropped 20 to 30 feet from a crane. Bowen sought compensation for his disability under the LHWCA. Deputy Commissioner Reginald Johnson investigated the claim and determined that Bowen was temporarily totally disabled from October 30, 1973 to April 30, 1975 and from November 30, 1977 to April 26, 1979, and permanently totally disabled thereafter. Johnson found that the employer/carrier had voluntarily paid Bowen compensation in the amount of $210.54 per week for the periods of temporary total disability, the maximum compensation rate in effect at the time of the injury.[1] Johnson ordered that after the injury became permanent Bowen was entitled to cost-of-living adjustments pursuant to § 10(f) of

Robert K. Udziela, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Or., for petitioner.

---

1. In cases of permanent or temporary total disability, the Act provides for compensation equal to two-thirds of the claimant's average weekly wage at the time of his injury. 33 U.S.C. § 908(a), (b). *See* 33 U.S.C. § 910(a)–(c) (computation of average weekly wage). On October 1, 1973, Bowen's weekly wage was $677.28. The Act, however, limits compensation for disability or death to a maximum rate of 200 percent of the applicable national average weekly wage. 33 U.S.C. § 906(b)(1). *See* 33 U.S.C. § 906(b)(3) (computation of national average weekly wage). The maximum rate of compensation on October 1, 1973 was $210.54.

the Act.[2] Accordingly, Johnson determined that the employer/carrier's weekly compensation obligation from April 27, 1979 through September 30, 1979 would be $396.78; from October 1, 1979 through September 30, 1980, $426.56; and from October 1, 1980 through April 23, 1981, $451.42, a total of 104 weeks. These figures represented adjustments to Bowen's $210.54 compensation rate that included the total annual increases in the cost of living since October 1, 1973. In accordance with § 8(f) of the Act, 33 U.S.C. § 908(f), Johnson ruled that compensation for all subsequent periods of disability would be payable from the Special Fund established in Section 44 of the Act. Johnson filed his order with the National Office of the Director of the Office of Workers' Compensation Programs ("OWCP").

Upon review of the order, the Director notified the Fourteenth Compensation District that Deputy Commissioner Johnson had miscalculated the compensation due Bowen by giving him, at the time his disability became permanent, the benefit of all cost-of-living increases between the determination of his temporary total disability and the onset of his permanent total disability. Accordingly, Deputy Commissioner Collis Overton amended the order, giving Bowen the benefit of the cost-of-living increases occurring only after he became permanently totally disabled. The amended award was as follows: temporary disability from October 30, 1973 to April 30, 1975, and from November 30, 1977 to April 26, 1979 at the weekly rate of $210.54; permanent total disability from April 27, 1979 to September 30, 1979 at the weekly rate of $210.54, from October 1, 1979 through September 30, 1980 at the weekly rate of $226.00, and from October 1, 1980 through April 23, 1981 at the weekly rate of $240.00.

Bowen appealed the amended compensation order to the BRB, suggesting that Deputy Commissioner Johnson's construction of the statute was correct. The BRB affirmed, noting that its holding was consistent with its prior rulings. *See Phillips v. Marine Concrete Structures, Inc.*, 21 B.R.B.S. 233, 236–37 (1988); *Scott v. Lockheed Shipbuilding & Constr. Co.*, 18 B.R.B.S. 246, 249 (1986). Bowen now challenges this BRB ruling. We have jurisdiction pursuant to 33 U.S.C. § 921(c).

## II. STANDARD OF REVIEW

■ We review BRB decisions for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1284 (9th Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984) (quoting *Bumble Bee SeaFoods v. Director, Office of Workers' Compensation Programs*, 629 F.2d 1327, 1329 (9th Cir.1980)). Because the BRB is not a policymaking agency, its interpretation of the LHWCA is not entitled to any special deference from the courts. *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514–15, 66 L.Ed.2d 446 (1980).

## III. DISCUSSION

■ This case turns on the proper interpretation of § 10(f) of the LHWCA, which states:

(f) Effective October 1 of each year, the compensation or death benefits payable for permanent total disability or death arising out of injuries subject to this chapter shall be increased by the lesser of—

(1) a percentage equal to the percentage (if any) by which the applicable national weekly wage for the period beginning on such October 1, as determined under section 906(b) of this title, exceeds the applicable national average weekly wage, as so determined, for the period beginning with the preceding October 1; or

**2.** § 10(f) of the LHWCA, 33 U.S.C. § 910(f), provides for yearly adjustments to the compensation for permanent total disability, pegged to increases in the national average weekly wage.

(2) 5 per centum.[3]

In construing the LHWCA, we look first to its plain language. *See Morrison–Knudsen Constr. Co. v. Director, OWCP,* 461 U.S. 624, 630, 103 S.Ct. 2045, 2048, 76 L.Ed.2d 194 (1983). By its terms, § 10(f) provides only for an annual cost-of-living adjustment, effective October 1 of each year, to the compensation payable for permanent total disability. There is nothing in § 10(f) to suggest that Congress intended claimants who are permanently totally disabled to receive the benefit of intervening cost-of-living adjustments occurring during a prior period of temporary disability. The section does not distinguish between the adjustment that is due on the first October 1 following the onset of permanent total disability and that due on all succeeding October 1's. At each interval, the adjustment is merely a yearly increment over the preceding year. Nor does the section provide that those claimants whose injury results in an immediate permanent total disability should be treated differently from those who attain permanent total disability status years later.

Had Congress intended § 10(f) to be interpreted as Bowen proposes, it could have included a "catch-up" clause as it did in § 10(h) of the LHWCA, 33 U.S.C. § 910(h), which was passed at the same time as § 10(f). Section 10(h) provides an explicit mechanism for increasing the level of compensation for claimants whose injuries resulted in total permanent disability or

death prior to October 27, 1972 so that the award approximates the level of compensation awarded employees injured after that date. Thus, Congress knew how to draft a provision to account for inflation during periods of stable compensation, but did not include such a provision in § 10(f). Moreover, there is no evidence in the legislative history of the LHWCA to support Bowen's interpretation of the statute.[4] These facts suggest that the absence of a "catch-up" clause was deliberate.

In light of the statutory language and legislative history of § 10(f), we are compelled to conclude that the Director's construction of this section is correct, and we adopt that interpretation as the law of this circuit.[5] As the concurring opinion points out, the result is a harsh one. The statute is clear, however, and if it is to be modified, Congress will have to do it.

AFFIRMED.

TANG, Circuit Judge, concurring:

I write separately because the result in this case, though legally compelled, departs from a disabled worker's reality.

Under the Longshore and Harbor Workers' Compensation Act, workers suffering from permanent total disability receive cost-of-living increases to their benefits, while those suffering from temporary total disability do not. This scheme makes sense if a disability remains temporary, since

---

3. The 5 percent cap on adjustments was added as part of the 1984 amendments to the Act. Because the amendments are not retroactive (*See Phillips v. Marine Concrete Structures Inc. and USF & G, Director, Office of Workers' Compensation Programs,* 21 B.R.B.S. 233 (August 30, 1988)), the 5 percent limitation is not an issue here.

4. The House and Senate Reports both describe § 10(f) as a provision "for upgrading benefits in future years for cases of permanent total disability or death benefits." H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. 3 (1972); S.Rep. No. 92–1125, 92d Cong., 2d Sess. 6 (1972), U.S.Code Cong. & Admin.News 1972, pp. 4698, 4700. Congress earlier rejected a proposed version of § 10(f) that would have provided for annual adjustments to compensation "payable on account of disability or death," with no limitation as to the type of disability—permanent or tem-

porary, total or partial—to which such adjustments would be applicable. S. 2318, 92d Cong., 2d Sess. § 11 (1971).

5. Brown asks us to follow *Holliday v. Todd Shipyards Corp.,* 654 F.2d 415 (5th Cir.1981) in which the Fifth Circuit approved, without analysis, an agreement between the parties whereby the claimant's permanent total disability adjustment rate would include all intervening § 10(f) adjustments occurring during the period of his temporary total disability. In *Brandt v. Stidham Tire Co.,* 785 F.2d 329 (D.C.Cir.1986), the D.C. Circuit followed *Holliday* "at least until the precedent is overruled in the Fifth Circuit." *Id.* at 332. Recently, however, the Fifth Circuit, sitting en banc, overruled *Holliday* and adopted the position we take here. *See Phillips v. Marine Concrete Structures Inc.,* 895 F.2d 1033 (5th Cir.1990).

benefits for temporary, limited durations should not require cost-of-living increases. A "temporary" total disability, however, may eventually become "permanent" because of a worker's failure to heal as once predicted. While by the terms of the Act, a "temporary" disability thus becomes "permanent," realistically the disability was always permanent, and is only recently diagnosed or adjudicated as permanent.

In this case, Bowen suffered a period of "temporary" total disability which eventually became "permanent." Of course, realistically, there was no difference in Bowen's condition or abilities between the time he was "temporarily" disabled and the time he was "permanently" disabled. Nonetheless, the Act seems to compel this artificial distinction between Bowen's period of temporary and permanent disability by defining permanent disability as a condition "adjudged." 33 U.S.C. 908(a). No one disputes the date Bowen was "adjudged" permanently totally disabled, triggering his entitlement to cost-of-living increases. This artificial distinction, however, results in exclusion of the period immediately preceding Bowen's adjudication as permanently disabled from computations for cost-of-living increases because Bowen was at that point adjudged previously only temporarily disabled.

This result defies common sense. Indeed, the D.C. Circuit noted that a more "sensible" reading of the Act would permit inclusion of periods of "temporary" disability preceding classification as "permanent" in cost-of-living increase computations. *Brandt v. Stidham Tire Co.*, 785 F.2d 329, 332 n. 4 (D.C.Cir.1986). In the D.C. Circuit's case, a worker was classified as "temporarily" disabled for *eight* years while "it was unclear whether his total disability would endure" before, upon adjudication and classification as "permanently" disabled, he became eligible for cost-of-living increases. *Id.* at 331. Of course, the worker was as "permanently" disabled at the beginning of his "temporary" eight years' disability as he was at the end of it. Common sense and fairness would dictate treating both periods alike. Their disparate treatment not only offends common

sense and fairness, but also may discourage workers from attempting to return to work because any postponement of "permanent" disability will, as in Bowen's case, disqualify the interim period from computation in cost-of-living increases.

Of course, Congress must draw lines on compensation entitlements somewhere, and this court must abide those lines. I therefore concur in the majority's opinion. I would point out, however, that a line drawn at the adjudication of a "permanent" disability which excludes a period immediately preceding it of "temporary" total disability makes no practical sense and fails to serve the beneficent purposes of the Act.