**James Gordon HOLE, Petitioner,**

v.

**MIAMI SHIPYARDS CORPORATION, Continental Insurance Company and Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Respondents.**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Petitioner,**

v.

**MIAMI SHIPYARDS CORPORATION and Continental Insurance Company, Respondents.**

**Nos. 80–5351, 80–5352.**

United States Court of Appeals,
Fifth Circuit.
Unit B

March 27, 1981.

Order Filed June 18, 1981.

---

Gladson & Sullivan, Guy A. Gladson, Jr., Miami, Fla., for James Gordon Hole.

Williams and Zientz, Mark L. Zientz, Coral Gables, Fla., for Miami Shipyards and Continental Ins.

Joshua T. Gillelan, II, Washington, D. C., for Office of Workers' Compensation.

Before GODBOLD, Chief Judge, KRAV-ITCH and HATCHETT, Circuit Judges.

GODBOLD, Chief Judge:

An Administrative Law Judge found that Gordon Hole, a claimant under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., was one percent permanently partially disabled. The Benefits Review Board reversed. In these consolidated cases we find that substantial evidence supports the ALJ's determination and therefore reverse the Board.

The basic facts are not in dispute. On April 18, 1975 Hole ruptured a disc in his back while performing his duties as machine shop supervisor and yard supervisor for respondent Miami Shipyards Corp. Miami's compensation carrier voluntarily paid temporary total disability compensation for some 24 weeks, during which time Hole's disc was surgically repaired. Hole returned to work at Miami on October 2, 1975 in a light duty status but resigned February 22, 1976 because of progressive pain making it impossible for him adequately to fulfill his duties. Two weeks later he secured employment for a period of five years managing a desalination plant at a salary greater than his earnings at Miami. This employment will terminate in 1981.

The ALJ found, and the record supports, that all of Hole's employment prior to his injury required heavy physical labor, including lifting in excess of 100 pounds and climbing and moving about in the confined quarters of ships, and that his physical condition precludes his returning to this type of work. Hole experiences continual pain in both buttocks and down the right leg and is unable to bend fully. His present employment is his first managerial position. The ALJ found that this is the only type of job Hole can perform that makes use of the knowledge and expertise he acquired in his years as a marine machinist or mechanical engineer.

Because of Hole's virtually undisputed physical disability, his relative lack of managerial experience, and the uncertainty that he will be able to transfer his expertise to other managerial employment at a substantial salary when his present employment contract expires, the ALJ concluded that Hole's post-injury earnings are not a fair and reasonable measure of his earning capacity. Having found that the precise degree of impairment of Hole's earning capacity could not be determined at this time, the ALJ awarded compensation on the basis of a one percent permanent partial disability in order to "keep[ ] the case alive for purposes of sensible modification of the Order if and when demonstrable change occurs in [Hole's] earning power." ALJ opinion at 4.

Miami and its insurer appealed the ALJ's order to the Benefits Review Board, contesting the conclusion that Hole's present earnings do not fairly and reasonably represent his earning capacity and the resulting finding of one percent permanent partial disability. The Board reversed, concluding that Hole had not established any possibility of future economic harm and that the ALJ's order was based on speculation alone. Judge Miller, dissenting, argued that the majority had impermissibly substituted its judgment for that of the ALJ.

Under 33 U.S.C. § 921(b)(3) the standard of review to be applied by the Board is clear: "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole."

[T]he Board does not have authority to engage in a de novo review of the evidence, or to substitute its views for that of the administrative law judge. . . . Rather, the findings of the administrative law judge must be accepted unless unsupported by substantial evidence in the record considered as a whole, . . . or unless they are "irrational," . . . . Moreover, if supported by the evidence and not inconsistent with the law, the administrative law judge's inference is conclusive. That the facts may permit diverse inferences is immaterial. The administrative law judge alone is charged with the duty of selecting the inference which seems most reasonable and his choice, if supported by the evidence, may not be disturbed.

*Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir. 1976) (citations omitted). "Although the standard of review in this Court is not set out in the statute, it is evident that we are to review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations." *Id.*

The LWHCA does not provide compensation to injured workers for physical injuries standing alone but only for "disability," defined by 33 U.S.C. § 902(10) as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." However, it will often be impossible at the time a claim is filed to determine the precise degree of economic harm suffered by a claimant. Therefore, 33 U.S.C. § 922 provides that an award of compensation may be modified at any time within one year after the last payment of compensation. Such a modification may be made either on the ground of changed conditions or on the ground of a mistake in the original determination of disability. Thus, if an initial determination is made that a claimant has suffered some degree of economic harm, however slight, and circumstances later develop indicating that the claimant was harmed to a greater or lesser degree than was originally apparent, the compensation award may be modified years later to reflect this greater or lesser economic injury.

An initial finding of no economic disability, however, may only be modified within one year of such finding, even though subsequent events make it apparent that the claimant has suffered severe economic harm. Congress realized the potentially harsh effect of this relatively short statute of limitations in a case where a claimant's immediate post-injury earnings are equal to or greater than his earnings prior to his injury, if those earnings were taken as a conclusive measure of earning capacity, and, therefore, provided in 33 U.S.C. § 908(h),

> [t]hat if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earn-

ing capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.

The Board has consistently recognized that 33 U.S.C. §§ 908(h) and 922 require a "forward looking" perspective in considering whether a claimant has suffered a decline in wage-earning capacity. *Hughes v. Litton Systems, Inc.,* 6 BRBS 301, 304 (1977); *Cooper v. Sursum Corda, Inc.,* 1 BRBS 60, *aff'd* 521 F.2d 324 (D.C.Cir.1975). In reversing the order in the instant case, however, the Board stated that "we in no way intended to imply that this forward looking concept for determining claimant's post-injury wage-earning capacity is any reason for 'removing' the one-year statute of limitations *when there is no evidence on which to reasonably base a conclusion that claimant has suffered or will suffer any economic loss as a result of his work-related injury.*" Board opinion at 6–7 (emphasis added). We do not disagree with this statement as an abstract proposition, but it does not apply to this case.

It is not open to serious question that Hole is unable physically to perform any of the jobs he held prior to his injury, that his present job is his first managerial position, and that his present job will terminate in 1981. From these facts the ALJ concluded that Hole's present earnings do not fairly and reasonably represent his earning capacity. In so concluding the ALJ necessarily inferred that there is a significant possibility that Hole will at some future time suffer economic harm as a result of his injury. This is a reasonable inference from the evidence.

■ Miami would have us hold that the only reasonable inference to be drawn from the fact of Hole's five year contract with

the desalination plant is that he will add to his experience and qualifications, making it that much easier for him to secure similarly remunerative sedentary employment in the future. This may be a reasonable inference, but in the absence of evidence that Hole is adding to his skills through his experience in his present position it is no more and no less compelled by the evidence than that drawn by the ALJ. The Board majority may have felt that the inference suggested by Miami was more reasonable than that drawn by the ALJ, but in substituting its judgment for the ALJ's it exceeded its authority under the Act.

The Board majority reasoned that the ALJ's determination that Hole's present earnings do not fairly and reasonably represent his wage-earning capacity was impermissibly influenced by his concern for the short statute of limitations. We do not agree. The ALJ did express such a concern, but his opinion, read in its entirety, evidences a proper regard for the Congressional mandate to consider "the effect of disability as it may naturally extend into the future." 33 U.S.C. § 908(h). Such consideration is inherently speculative to some degree. So long as the ALJ does not go beyond inferences reasonably drawn from the evidence his decision should not be reversed.

■ There is substantial evidence in the record as a whole to support the ALJ's determination that Hole has suffered some degree of economic harm but that the precise degree of harm cannot be determined at this time. This is not a determination that the record is inadequate for decision but a recognition that the *extent* of Hole's economic injury is *unknowable* at the present time. Like the ALJ, we believe

that "[a] small award, fashioned expressly for the purpose of preserving Claimant's right to receive compensation should disability in its economic sense ever visit him, seems far less arbitrary than picking a 'disability' figure out of thin air." ALJ opinion at 4. Hole might have objected to the ALJ's selection of a figure of one percent but he has not. As Hole has argued, "[a] one percent rating is no more and no less arbitrary than a five percent or ten. It is merely less familiar." Brief for Claimant at 7. There is also evidence to support a conclusion that Hole has not suffered economic harm, but it is the duty of the ALJ, not of the Board or of this court, to weigh the evidence and draw reasonable inferences therefrom.

■ Gladson, Hole's attorney, also complains of the Board's failure to rule on his application for attorney's fees for services before the Board. The statute, 33 U.S.C. § 928(a),[1] mandates an award of fees to the attorney for a successful claimant against an employer who has contested its liability for compensation. Because Hole was successful before the Board with respect to matters not involved in this appeal, the Board's failure to award fees to his attorney for his services relating to those matters was error. We therefore remand for an award of attorney's fees, which must be set in the first instance by the Board and not by this court. *Director, OWCP v. Black Diamond Coal Mining Co.*, 598 F.2d 945, 953 (5th Cir. 1979).

■ The Act does not address the question whether, if a claimant is unsuccessful before the Board but this court reverses the Board's order, the claimant's attorney is entitled to an award of fees for services

---

1. Section 928(a) provides:

 If the employer or carrier declines to pay any compensation on or before the thirtieth day after receiving written notice of a claim for compensation having been filed from the deputy commissioner, on the ground that there is no liability for compensation within the provisions of this chapter and the person seeking benefits shall thereafter have utilized the services of an attorney at law in the successful prosecution of his claim, *there*

 *shall be awarded,* in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.
 (Emphasis added.)

before the Board. In addition to the fee provision in 33 U.S.C. § 928(a), § 928(b) provides that where an employer pays or tenders some compensation but contests its liability for further compensation a successful claimant's attorney shall be awarded fees "based solely upon the difference between the amount awarded and the amount tendered or paid . . . ." Section 928(c) provides that the Board or court may approve an attorney's fee which, if chargeable to the claimant, may be made a lien upon any compensation awarded. Section 928(d) provides for assessment of witness fees and travel costs against the employer in cases where the employer is liable for the claimant's attorney's fees. Finally, § 928(e) makes it a misdemeanor to accept fees for services on behalf of a claimant which have not been approved or awarded by the appropriate tribunal.

From this comprehensive scheme regulating attorney's fees we discern a Congressional intent that when an employer contests its liability for compensation in whole or in part and the claimant is ultimately successful, the employer and not the claimant must pay the claimant's attorney's fees for services necessary to that success "regardless of how close a case might be which is litigated but finally lost by [the employer]." *Overseas African Construction Corp. v. McMullen*, 500 F.2d 1291, 1298 n.14 (2d Cir. 1974). We therefore conclude, as the Second Circuit did in *American Stevedores, Inc. v. Salzano*, 538 F.2d 933, 937 (2d Cir. 1976), that Gladson "is entitled to a fee for legal services rendered before . . . the Benefits Review Board, as well as for the successful prosecution of this appeal."

Gladson has also submitted an application for fees for his services before this court, to which Miami has not responded. There is a facial inconsistency in the reporting of some items, and the number of hours spent on review of the record, legal research, and dictation of the brief are not separately listed. Within 20 days Gladson may submit a revised application conforming to the standards set forth in *Ayers Steamship Co. v. Bryant*, 544 F.2d 812 (5th Cir. 1977). Miami will be allowed an additional 20 days to respond by brief and by affidavit if it wishes.

The order of the Benefits Review Board is REVERSED and the case is REMANDED for an award of attorney's fees.

ORDER:

During the pendency of this appeal the Benefits Review Board has granted claimant's request for attorney's fees for services before the Board, so there is no necessity to remand to the Board for this purpose. The prior mandate is vacated and the cause is REVERSED.

Appellant's application for attorney's fees and expenses on appeal to the extent of $600.00 is granted.