United States Court of Appeals,

Fifth Circuit.

No. 93-5114.

BOLAND MARINE & MANUFACTURING CO., and Continental Insurance Co.,
Petitioners,

v.

Billy C. RIHNER, son of Paul Rihner, deceased, and Director,
Office of Workers' Compensation Programs, U.S. Department of Labor,
Respondents.

Jan. 9, 1995.

Petition for Review of a Final Order of the Benefits Review Board.

Before KING and BENAVIDES, Circuit Judges, and LAKE, District
Judge.[*]

KING, Circuit Judge:

This case involves an award of attorney's fees for proceedings
conducted under the Longshore and Harbor Workers' Compensation Act,
33 U.S.C. §§ 901-950. Below, an Administrative Law Judge
determined that the Director of the Office of Workers' Compensation
Programs fostered litigation without reasonable grounds in the
proceedings involving the claim of Billy C. Rihner. Therefore, the
Administrative Law Judge assessed attorney's fees as costs against
the Special Fund under the provisions of 33 U.S.C. § 926. The
Director appealed, and the Benefits Review Board determined that
the Administrative Law Judge erred in awarding fees from the
Special Fund and reversed the award of attorney's fees.
Furthermore, invoking 33 U.S.C. § 928(b), the Benefits Review Board

---

[*]District Judge of the Southern District of Texas, sitting
by designation.

1

found that the employer, Boland Marine & Manufacturing Company, was liable for the attorney's fees. On remand, an Administrative Law Judge ordered Boland Marine & Manufacturing Company to pay $4,060.56 in attorney's fees and expenses. Subsequently, the Benefits Review Board affirmed the Administrative Law Judge's order. Boland Marine & Manufacturing Company and its insurer, Continental Insurance Company, appeal the BRB's decisions. Finding no reversible error, we affirm.

## I. BACKGROUND

In February 1981, Paul Rihner suffered a fatal heart attack while at work. His wife, Carmelite Rihner, filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA") in August of that same year, and Boland Marine and Manufacturing Company and its insurer, Continental Insurance Company (collectively "Boland Marine"), began to pay benefits retroactively from the time of Paul Rihner's death. Carmelite Rihner continued to receive monthly payments from Boland Marine until her death in February 1985. At that time, Billy Rihner ("Rihner"), the child of Paul and Carmelite Rihner, began to receive benefit payments.[1]

Soon thereafter, Boland Marine sought relief under Section 8(f) of LHWCA which limits the time an employer must pay benefits

---

[1]Although Billy Rihner is an adult, he was entitled to benefits as a dependent child under the provisions of LHWCA because of mental disabilities. Specifically, LHWCA provides that the word child, as used within the Act, includes persons "who, though, eighteen years of age or over, [are] wholly dependent on the employee and incapable of self-support by reason of mental or physical disability." 33 U.S.C. § 902(14).

for a disability caused, in part, by an existing injury or disability.[2] Although the Deputy Commissioner recommended that relief be granted under Section 8, the Associate Director denied relief under that section, noting that "it could be concluded that the claimant's demise was a natural progression of his underlying condition"; "it is questionable whether the claimant's fatal heart attack "arose out of his employment' "; and "it is not clear from the file the basis for Billy C. Rihner's entitlement since he is an adult child." Several months later, in July of 1985, Boland Marine again requested relief under Section 8(f). Once again, contrary to the recommendation of the Deputy Commissioner, in November of 1986, the Associate Director found "that compensability ha[d] not been established" and denied the request. Additionally, in the letter denying Section 8(f) relief, the Associate Director advised "that

---

[2]Specifically, LHWCA states:

> In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions ... of this section, the employee is totally and permanently disabled, and the disability is found not to be solely due to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is greater.... In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide ... compensation payments or death benefits for one hundred and four weeks only.

33 U.S.C. § 908(f)(1).

3

no further administrative action should be taken in regard to the claim for compensation or the application for section 8(f) relief."

The month after it was notified of the second rejection of its claim, Boland Marine filed a "Notice of Final Payment or Suspension of Compensation Payments" and discontinued paying benefits to Rihner. A claim for benefits under LHWCA was filed on behalf of Rihner and the case was referred to the Office of Administrative Law Judges. In its pre-hearing statement, Boland Marine listed, *inter alia,* "[w]hether Mr. Rihner suffered an accident ... while working for Boland Marine," "the nature and causes of Mr. Rihner's death," and "[w]hether or not Mr. Rihner's prior cardiac ailments and other medical conditions constitute a pre-existing permanent partial disability" as issues to be presented in the hearing.

In June 1988, the Administrative Law Judge ("ALJ") determined that Paul Rihner's "pre-existing conditions of diabetes mellitus, coronary arteriosclerosis and hypertension ... constituted a permanent partial disability for purposes of Section 8(f) of the Act." Further, the ALJ found that: if Paul Rihner had not suffered from these conditions "his heart attack might not have been fatal, or it might not have occurred at all"; "Mr. Rihner's preexisting permanent partial disability predisposed him to disability, and in combination with his heart attack ... resulted in his death"; and "Mr. Rihner's disability was manifest to his employers." Thus, the ALJ concluded that "Section 8(f) of the Act is applicable to this case so as to limit the Employer's liability to 104 weeks of compensation payments." Finally, the ALJ

4

determined that since Rihner was successful in his claim, Boland Marine was required to pay his attorney's fees.

Boland Marine contested the award of attorney's fees against it, and the ALJ altered its decision, ordering the "Special Fund to pay [Rihner's] attorney's fees as the Director [of the Office of Worker's Compensation Programs ("the Director") ] fostered litigation without reasonable grounds for doing so." Specifically, the ALJ determined that:

> the record clearly indicates that [Rihner] was entitled to benefits and that the Employer/Carrier was entitled to § 8(f) relief. No contradictory evidence was submitted. Therefore, I find the Director's stance prior to hearing to be unreasonable, particularly in light of the fact that Director failed to pursue its position at the formal hearing. Accordingly, I find that the Director instituted the proceedings in this case without reasonable ground, and the Special Fund is therefore liable for [Rihner's] attorney's fees pursuant to Section 26.

Thus, the ALJ ordered the Special Fund to pay attorney's fees of $3885 and expenses of $175.56.

The Director appealed the order granting attorney's fees from the Special Fund to the Benefits Review Board ("BRB"). The BRB found that the ALJ erred "in assessing attorney's fees against the Special Fund pursuant to Section 26, as this section provides for the assessment of the costs of a proceeding only against a party who has instituted or continued the proceedings *without reasonable grounds*." Specifically, the BRB found that it was Boland Marine's actions "that necessitated a formal hearing ... [r]egardless of the merit of the Director's position in denying Section 8(f) relief." Moreover, the BRB reasoned that, because from a pre-hearing perspective the Director did not know or should not have known that

5

his position would be unsuccessful, the Director did not continue the proceedings without reasonable ground.

Additionally, the BRB noted that the "Special Fund cannot be held liable for an attorney's fee under Section 28." The BRB, however, did find that since Boland Marine terminated payments to Rihner, Boland Marine was liable for Rihner's attorney's fees under Section 28(b) notwithstanding its stipulation to Rihner's entitlement to compensation at the hearing or its successful petition for relief under Section 8(f). Thus, the BRB vacated the ALJ's order granting attorney's fees from the Special Fund under Section 26 and modified the ALJ's decision so to hold Boland Marine liable for Rihner's attorney's fees.

Subsequently, the case was remanded to an ALJ who assessed attorney's fees against Boland Marine. Boland Marine then appealed to the BRB which affirmed the ALJ's order on remand. This appeal followed. Specifically, Boland Marine argues that: (1) the BRB erred in concluding that Director did not institute or continue the proceedings in this case without reasonable grounds, and, therefore, according to Section 26 of LHWCA, attorney's fees may be assessed against the Special Fund; (2) Rihner should be entitled to attorney's fees from the Special Fund under the "bad faith" exception to the American Rule, the Administrative Procedure Act, the Federal Rules of Civil Procedure, or the ALJ's general equitable powers; and (3) an employer cannot be liable under Section 28 of LHWCA when it did not controvert a Claimant's entitlement to benefits. We reject all of Boland Marine's

6

contentions, and we affirm the decision of the BRB.

## II. STANDARD OF REVIEW

In reviewing the decisions of the BRB, the scope of this court's review is relatively narrow.  In examining the orders of the BRB our role is limited to " "considering errors of law and making certain that the BRB adhered to its statutory standard of review of factual determinations, that is, whether the ALJ's findings of fact are supported by substantial evidence and consistent with the law.' "  *Avondale Shipyards, Inc. v. Kennel,* 914 F.2d 88, 90 (5th Cir.1990) (quoting *Miller v. Central Dispatch, Inc.,* 673 F.2d 773, 778 (5th Cir. Unit A 1982));  *accord Tanner v. Ingalls Shipbuilding,* 2 F.3d 143, 144 (5th Cir.1993);  *Empire United Stevedores v. Gatlin,* 936 F.2d 819, 822 (5th Cir.1991).  In our review we "may not substitute [our] judgment for that of the ALJ, nor may we reweigh or reappraise the evidence," instead we inquire whether there was evidence supporting the ALJ's factual findings.  *Empire United Stevedores,* 936 F.2d at 822 (citations omitted).

## III. DISCUSSION

*A. Assessment of Fees under Section 26*

Boland Marine's first contention is that the BRB improperly disregarded substantial evidence supporting the ALJ's determination that the Director instituted or continued the proceedings in this case without reasonable ground.  As a consequence, Boland Marine asserts that the BRB should have affirmed the ALJ's award of attorney's fees from the Special Fund pursuant to Section 26 of

7

LHWCA. Regardless of the propriety of the BRB's review, we cannot support Boland Marine's position because we find, as did the Ninth Circuit in *Metropolitan Stevedore Co. v. Brickner,* 11 F.3d 887 (9th Cir.1993), that Section 26 vests neither the ALJ nor the BRB with the power to award attorneys fees.

Section 26 of LHWCA states that:

> If the court having jurisdiction of proceedings in respect of any claim or compensation order determines that the proceedings in respect of such claim or order have been instituted or continued without reasonable ground, the costs of such proceedings shall be assessed against the party who has so instituted or continued such proceedings.

33 U.S.C. § 926. This section grants the power to assess costs only to *courts,* not to administrative agencies. Thus, while in the past, the BRB has assumed that Section 26 allowed ALJs to assess costs, *see, e.g., Medrano v. Bethlehem Steel Corp.,* 23 B.R.B.S. 223, 225-26 (1990); *Toscano v. Sun Ship, Inc.,* 24 B.R.B.S. 207, 211-13 (1991), "we cannot ... disregard the plain meaning of the statute or its legislative history, nor may we create rights not given or implied by the terms of the Act." *Brickner,* 11 F.3d at 889.

As the Ninth Circuit noted in *Brickner,* it is clear from other provisions of LHWCA that Congress knew the difference between the ALJ, the BRB, and the federal courts when it parceled out the power to award attorney's fees in LHWCA's various provisions. *Id.* at 890. For example, Section 28 of LHWCA provides for an award of attorneys fees to a successful claimant in "an amount approved by the deputy commissioner, Board, or court, as the case may be." 33 U.S.C. § 928(a); *see also Brickner,* 11 F.3d at 890 (discussing the

8

powers granted by Section 28). Conversely, Section 26 does not provide administrative agencies with such power; instead, that section specifically grants the power to assess costs only to "the court having jurisdiction of the claim or the proceeding." 33 U.S.C. § 926.

The legislative history of LHWCA further buttresses the notion that the power to assess costs under Section 26 rests only with courts. The original bill provided that "[i]f the deputy commissioner or the District Court before whom any proceedings are brought determines that such proceedings have been brought, prosecuted, or defended without reasonable ground, the whole cost of the proceedings shall be assessed upon the party who has so brought, prosecuted or defended them." *Compensation for Employees in Certain Maritime Employments: Hearings on S. 3170 Before a Subcomm. of the Senate Comm. on the Judiciary,* 69th Cong., 1st Sess. 11 (1927). When the bill was passed, however, the power to assess costs was given only to the courts. *See* 33 U.S.C. § 926; *Brickner,* 11 F.3d at 890.

Moreover, although other sections of LHWCA have been amended in the more than sixty years since it was passed, Section 26 has not been changed. Notably, in 1972, Congress altered the procedures for adjudicating claims under LHWCA, transferring formal adjudication responsibilities from deputy commissioners to ALJs. *Brickner,* 11 F.3d at 890. At the same time, Congress also moved the forum for initial review proceedings from the district courts to the BRB. *Id.* Despite these changes, Congress did not alter

9

Section 26. As the Ninth Circuit concluded, "[i]f Congress wanted to confer cost awarding power upon the Board, it could easily have done so when it amended the statutory scheme. Instead, it continued the prior division between court and administrative proceedings." *Id.* Thus, while we note that it is somewhat unusual that costs for unreasonably instituting an action cannot be assessed in the forum where the action is instituted or continued, we cannot ignore the plain language of the statute. Simply, neither the ALJ nor BRB is a court, and Section 26 provides only courts with the power to award costs. Consequently, we find no reversible error in the BRB's decision vacating the ALJ's award of attorney's fees under Section 26.[3]

*B. Attorney's Fees Under Other Statutes or Equitable Powers*

Boland Marine also argues that since the Director acted unreasonably, the Director should be held liable for Rihner's attorney's fees under the " "bad faith' exception to the American Rule and/or under the general powers and authorities of ALJ's pursuant to the Administrative Procedure Act, the Federal Rules of

---

[3]This result is consistent with the Second Circuit's holding in *Overseas African Construction Corp. v. McMullen,* 500 F.2d 1291 (2d Cir.1974). In *Overseas African Construction,* the court discussed the actions of the *district court* in assessing attorneys fees. *Id.* at 1297. Similarly, the Ninth Circuit's holding in *Stevedoring Services of America, Inc. v. Eggert,* 953 F.2d 552 (9th Cir.1992), *cert. denied,* --- U.S. ----, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992), is not contrary to this decision. The only information regarding the award of attorney's fees by the ALJ in that case is a reference to an award of 60 dollars granted as "a sanction for having made a proceeding to compel discovery necessary." *Id.* at 554. The court did not discuss the propriety of an ALJ's assessment of attorney's fees under Section 26, and we assume that the position of the Ninth Circuit on this issue is that which it recently expressed at length in *Brickner.*

Civil Procedure, and equity."

1. Attorney's Fees under the Federal Rules of Civil Procedure.

Boland Marine asserts that the Director should be forced to pay Rihner's attorney's fees pursuant to Federal Rules of Civil Procedure 11 or 16(f), both of which, according to Boland Marine, "allow for an award of attorneys fees as sanctions."

The Federal Rules of Civil Procedure apply "to proceedings for enforcement or review of compensation orders under [LHWCA §§ 18 and 21], except to the extent matters of procedure are provided for in the Act." Fed.R.Civ.P. 81(a)(6); *see also Brickner,* 11 F.3d at 891 (discussing the Rule). Section 18 of LHWCA governs the enforcement of benefit awards—the "collection of the defaulted payments" from an employer, or, if the employer is insolvent or otherwise unable to make payments, Section 18 authorizes payment from the Special Fund. 33 U.S.C. § 918. The enforcement procedures set out in this section require certain filings with the deputy commissioner and in the federal district court. Similarly, Section 21 of LHWCA sets forth the procedures for the review of compensation orders by the BRB and the federal courts. 33 U.S.C. § 921. Yet Rule 81(a)(6) does not make the Federal Rules of Civil Procedure applicable to all LHWCA proceedings since by its very language, it extends the reach of the Rules to enforcement and review proceedings only. *Brickner,* 11 F.3d at 891.

The Federal Rules of Civil Procedure, however, do apply in proceedings under LHWCA "in any situation not provided for or controlled ... by any statute, executive order, or regulation." 29

11

C.F.R. § 18.1(a). Nevertheless, while federal regulation incorporates the Federal Rules into some aspects of LHWCA proceedings, the imposition of attorney's fees and sanctions for instituting or continuing a proceeding without reasonable ground is an area provided for or controlled by the Act. Accordingly, we find that Rules 11 and 16 find no application in those situations.

As noted above, Section 26 of LHWCA "provides for the situation when a party institutes or continues a proceeding without reasonable ground." *Brickner,* 11 F.3d at 891. We agree with the reasoning of the Ninth Circuit that the inclusion of this section in LHWCA, "which allows a sanction for unreasonable claims against either party, impliedly precludes a sanction for bad faith claims, and therefore Rule 11 should not be incorporated." *Id.* Moreover, the notion that attorney misconduct in LHWCA proceedings should be governed by Section 26 instead of the sanctioning procedures of the Federal Rules of Civil Procedure is further supported by the federal regulations. Specifically, the federal regulations direct an ALJ to certify instances of attorney misbehavior to the "Federal District Court having jurisdiction in the place in which he or she is sitting to request appropriate remedies." 29 C.F.R. § 18.29.

We agree with the *Brickner* court that the sanctioning mechanism provided in Section 26 "makes it plain that Congress *has* considered the possibility that either party will do the acts contemplated by Rule 11 and has determined the stage at which corrective disciplinary action can be taken." *Brickner,* 11 F.3d at 891. Thus, we find that because Section 26 controls the

12

circumstances of a party continuing a proceeding without reasonable ground, the sanctioning procedures of the Federal Rules of Civil Procedure are not applicable to that conduct.

2. Attorney's Fees Under the American Rule

Under the well-established American Rule used in the federal courts, "absent statute or enforceable contact, litigants pay their own attorney's fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975); *accord Holliday v. Todd Shipyards Corp.,* 654 F.2d 415, 419 (5th Cir.1981), *overruled on other grounds, Phillips v. Marine Concrete Structures, Inc.,* 895 F.2d 1033 (5th Cir.1990); *Director v. Robertson,* 625 F.2d 873, 876 (9th Cir.1980). There are, however, a few nonstatutory exceptions to the American Rule. Courts may depart from the general rule that each party pays his own attorney's fees in "cases involving a common fund, situations where a party has willfully violated a court order, and cases of fraudulent, groundless, oppressive, or vexatious conduct." *Holliday,* 654 F.2d at 419 n. 4; *see also Alyeska Pipeline,* 421 U.S. at 257-59, 95 S.Ct. at 1621-22. A court's ability to award attorney's fees, even under these judicially-created exceptions to the American Rule, is not unfettered. In a statute such as LHWCA, Congress, "while fully recognizing and accepting the general rule, [has made] specific and explicit provisions for the allowance of attorney's fees," and the statute must guide courts in the award of such fees. *Alyeska Pipeline,* 421 U.S. at 260 & n. 33, 95 S.Ct. at 1623 & n. 33. In these situations, the Supreme Court has noted

13

that "it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine." *Id.* at 262, 95 S.Ct. at 1624; *see also Holliday,* 654 F.2d at 419-20 (discussing the applicability of the American Rule's statutory exceptions to LHWCA). Thus, *Alyeska Pipeline* seems to indicate that when a Congressional statute sets out the framework for the award of attorney's fees, courts should look to that statutory framework alone to determine whether sanctions should be awarded.

Notwithstanding this language, the Supreme Court recently indicated that even if a statute governs the imposition of attorney's fees a court may "resort to its inherent power to impose attorney's fees, as a sanction for bad faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 2135, 115 L.Ed.2d 27 (1991). In *Chambers,* the Court stated that while the "inherent powers of the lower federal courts can be limited by statute and rule[,] ... we do not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power." *Id.* at 47, 111 S.Ct. at 2134 (internal quotations and citations omitted). Consequently, the Court concluded that, even in the face of a statute or a rule, a court's ability to levy attorney's fees as sanctions was not limited to situations covered by that rule or statute. The Court noted that in a situation where a party acts in bad faith, and when "neither the statute nor the

14

rules [is] up to the task [of sanctioning the conduct], the court may safely rely on its inherent power" to assess attorney's fees. *Id.* at 50, 111 S.Ct. at 2136; *see also United States v. Horn,* 29 F.3d 754, 760 (1st Cir.1994) ("[E]ven though a particular abuse is covered by a specific statute or rule, a court still may invoke its supervisory power to address the abuse if the remedial provision is inadequate to the task."); *Amsted Indus. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 378 (Fed.Cir.1994) ("[S]tatutes governing sanctions do not displace the federal courts' inherent power to impose sanctions for bad faith and vexatious conduct.").

We recognize that there may be some tension between *Chambers* and *Alyeska Pipeline* regarding the ability of a court to exercise its equitable powers to assess attorney's fees for bad faith conduct in the face of a statute describing the circumstances in which fees may be assessed. *See Chambers,* 501 U.S. at 61, 111 S.Ct. at 2141 (Kennedy, J. dissenting) (noting the case "permits the exercise of inherent sanctioning powers without prior recourse to controlling rules and statutes, thereby abrogating to federal courts the power to regulate fees and costs"). Nevertheless, in the instant case, we need not concern ourselves with that tension. Simply, this is not a case in which the conduct of the Director rises to the level of abuse warranting the use of the court's inherent power to sanction. A court should invoke its inherent power to award attorney's fees only when it finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133; *accord*

15

*Amsted Indus.,* 23 F.3d at 379.

In the instant case, the ALJ commented that the "Director's stance prior to the hearing was unreasonable" because, despite contesting the 8(f) request of Boland Marine, the Director did not offer any evidence in opposition to the motion or pursue his position in opposition to the request for 8(f) relief at the formal hearing. Thus, the ALJ determined that the Director should be liable for Rihner's attorney's fees for "institut[ing] proceedings in this case without reasonable grounds." While this is the appropriate standard for a federal court (and, as discussed above, only a court) to assess attorney's fees under Section 26 of LHWCA, it is not the equivalent to the finding that a fraud was perpetrated on the court or that "very temple of justice has been defiled" which is required for a court assess attorney's fees through its inherent powers. Accordingly, we do not find that his actions warrant the exercise of the court's equitable powers to award attorney's fees.

3. Equal Access to Justice Act

Finally, Boland Marine makes a cursory argument that the Special Fund should be held liable for attorney's fees under the provisions of the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504. We find their argument meritless.

The EAJA allows parties in "certain adversary administrative proceedings to recover attorney's fees and costs from the government." *Hodge v. United States Dep't of Justice,* 929 F.2d 153, 154 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct.

16

866, 116 L.Ed.2d 772 (1992). In order to receive such an award, certain procedures must be followed. Specifically, "[a] party seeking an award of fees and other expenses shall, within thirty days of a final disposition in the adversary adjudication, submit to the agency an application which shows that the party is a prevailing party and is eligible to receive an award under [the] section...." 5 U.S.C. § 504(a)(2). Here, there is no evidence in the record that Rihner, the party seeking fees, followed these procedures. Accordingly, we will not address whether attorney's fees should be awarded under the provisions of the EAJA in this case.

*C. Boland Marine's Liability for Attorney's Fees under Section 28*

Boland Marine also argues that attorney's fees cannot be assessed against it under Section 28 of LHWCA because "it did not controvert [Rihner's] entitlement to benefits" and Rihner "did not successfully obtain an order which [Boland Marine] had contested." Specifically, Boland Marine argues that it "never contested the underlying compensability of Mr. [Paul] Rihner's heart attack ..., and [it] voluntarily paid death benefits to Mr. Rihner's widow and son." These contentions, however, are belied by the record of this case.

Section 28(b) of LHWCA provides for an award of attorney's fees when "the employer tenders partial compensation but refuses to pay the total amount claimed by the claimant, and the claimant uses the services of an attorney to successfully recover the total

17

amount claimed."[4] *Savannah Mach. & Shipyard Co. v. Director,* 642 F.2d 887, 889 (5th Cir.1981); *accord Holliday,* 654 F.2d at 419.

In addition to ceasing payment of benefits, Boland Marine specifically listed "[w]hether Mr. Rihner suffered an accident ... while working for Boland Marine, and the surrounding circumstances thereof" and "[t]he nature and causes of Mr. Rihner's death" as issues requiring resolution by the ALJ. In the initial proceeding, the ALJ expressly "found the evidence sufficient to establish that [Paul Rihner's] heart attack could have been caused by his employment" and that "death benefits are warranted in this case." Accordingly, the ALJ concluded that Rihner was entitled to attorney's fees from Boland Marine.

Although, when the ALJ revisited this issue, it determined that "it was the Director who placed compensability in issue," we find that the BRB accurately determined that this finding was not supported by the facts. Regardless of whether Boland Marine was entitled to relief from the Director under section 8(f), it was

---

[4]Section 28 states, in part:

> If the employer or carrier pays or tenders payment of compensation without an award to section 914(a) and (b) of this title, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the deputy commissioner or Board shall set the matter for an informal conference and following such conference the deputy commissioner or Board shall recommend in writing a disposition of the controversy.... If the claimant is successful in review proceedings before the Board or court in any such case an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimants counsel....

33 U.S.C. § 928(b).

Boland Marine's actions ceasing payment and contesting compensability for the underlying claim that required Rihner to hire an attorney to pursue his claim. As the BRB noted, the fact that an "employer is discharged from some compensation due to the operation of Section 8(f) does not affect its obligation for attorney's fees under Section 28(b)." *See Henry v. George Hyman Constr. Co.,* 749 F.2d 65, 69 (D.C.Cir.1984) ("a claimant has no interest in the *source* of compensation") (citing, *inter alia, Price v. Greyhound Bus Lines, Inc.,* 14 B.R.B.S. 439, 440 n. 1 (1981), *dismissed for lack of subject matter jurisdiction,* No. 81-1934 (4th Cir. Jan. 4, 1982), *cert. denied,* 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 70 (1982); *Creasy v. Bateson,* 14 B.R.B.S. 434, 437 (1981)).

In this case, Boland Marine discontinued payment of benefits. Rihner brought a claim, and in the pre-hearing filings, Boland Marine listed causation and compensability as issues to be resolved in the proceeding. Eventually, Rihner successfully recovered the full amount of his claim. Therefore, we find no error in the BRB's finding that under Section 28(b) of LHWCA, Boland Marine is liable for attorney's fees.

Additionally, we find that Boland Marine is responsible for Rihner's attorney's fees and expenses (totalling $5520.57) in this appeal. As we have noted, "when an employer contests its liability in whole or in part and the claimant is ultimately successful, the employer and not the claimant must pay the claimant's attorney's fees for services necessary to that success." *Hole v. Miami*

19

*Shipyards Corp.,* 640 F.2d 769, 774 (5th Cir.1981); *see also Vincent v. Consolidated Operating Co.,* 17 F.3d 782, 787 (5th Cir.1994) (per curiam) (holding in a LHWCA case that "[b]ecause the defendants denied their liability but lost this appeal, they are liable ... for the attorney's fees incurred in defending this appeal"). Thus, Rihner is entitled to "a fee rendered ... for the successful prosecution of this appeal." *Hole,* 640 F.2d at 774 (quoting *American Stevedores, Inc. v. Salzano,* 538 F.2d 933, 937 (2d Cir.1976)).

Finally, Rihner requests an award of interest on the attorney's fees. We, however, decline this request. In short, there is no indication in the statute or in the case law that interest is available on attorney's fees granted under Section 28 of LHWCA. *See Hobbs v. Director,* 820 F.2d 1528, 1531 (9th Cir.1987) (holding that interest is not available for attorney's fees and noting that "[i]t is the prerogative of Congress ... to establish the circumstances, if any, under which such interest may be available"); *Fisher v. Todd Shipyards,* 21 B.R.B.S. 323, (noting that "there is no legal authority under the Act for awarding interest" on attorney's fees).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the BRB, and we award attorney's fees and expenses for the appeal against Boland Marine and in favor of Rihner in the amount of $5520.57.