

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2001

# Barbera v. Director Office of Worker's Compensation

Precedential or Non-Precedential:

Docket 00-3212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Barbera v. Director Office of Worker's Compensation" (2001). *2001 Decisions.* Paper 60.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/60

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 27, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3212

JAMES BARBERA,
        Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, United States Department of Labor;
GLOBAL TERMINAL AND CONTAINER SERVICES, INC.

On Petition for Review of a Decision and Order
of the Benefits Review Board
(BRB Docket No. 99-0460)

Submitted Under Third Circuit LAR 34.1(a)
March 12, 2001

Before: MANSMANN, BARRY and COWEN, Circuit Judges.

(Filed March 27, 2001)

        Richard P. Stanton, Jr., Esquir e
        Suite 314
        17 Battery Place
        New York, NY 10004

        William M. Broderick
        Seven Dey Street
        Suite 700
        New York, NY 10007

         Counsel for Petitioner

Keith L. Flicker, Esquire
Flicker, Garelick & Associates
318 East 53rd Street
New York, NY 10022

Counsel for Respondent -- Global
Terminal and Container Services,
Inc.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

James Barbera ("Barbera") petitions for r eview of final
orders of the United States Department of Labor Benefits
Review Board (the "Board") affir ming in part and reversing
in part Orders of Administrative Law Judge Edith Barnett
("ALJ Barnett") and affirming Or ders of Administrative Law
Judge Linda Chapman ("ALJ Chapman").1 Petitioner makes
two claims. First, he claims that the Board err ed in
affirming ALJ Barnett's denial of a de minimis award under
the Longshore and Harbor Workers' Compensation Act (the
"LHWCA"), 33 U.S.C. SS 901 et seq. , where ALJ Barnett
found proof of Petitioner's present medical disability and a
reasonable expectation of future loss of wage-earning
capacity. Second, he claims that, (a) absent a finding of
abuse of discretion, the Board err ed in reversing ALJ
Barnett's award of attorney's fees to Petitioner's counsel,
and (b) the Board further erred in subsequently affirming
ALJ Chapman's significant reduction in counsel's hourly
rates. Petitioner specifically alleges that the Board
erroneously departed from its proper standard of
administrative review.

Because we conclude that, on the findings made by ALJ
Barnett and supported by substantial evidence, and on the
law as pronounced by the Supreme Court in Metropolitan
Stevedore Co. v. Rambo, 521 U.S. 121 (1997), Petitioner
was clearly entitled to a de minimis awar d, we will reverse
the Board and remand for determination of that award.

_____

1. Our jurisdiction over these matters is pursuant to 33 U.S.C. S 921(c).

2

Further, because we conclude that ALJ Barnett's award of attorney's fees was supported by substantial evidence and in accordance with the law, and that the Board was therefore without authority to disturb that award, we will reverse the Board and reinstate ALJ Barnett's award of attorney's fees.

I.

The basic facts are not in dispute. Petitioner's employment as a maintenance manager for Global Terminal & Container Services, Inc. ("Global") required him to inspect and estimate damage on shipping containers by climbing stacked containers and securing access through heavy container doors sometimes corroded by rust. On April 16, 1991, while attempting to force open the doors to a stacked container, Petitioner suffered an accident at Global's pier in Jersey City, New Jersey. As a result of this accident, he sustained a disabling herniation to his lower back. Because he was unable to continue his previous employment due to his disability, Petitioner sought and found employment as a surveyor with China Ocean Shipping Company in Charleston, South Carolina. Petitioner's orthopedic surgeon concluded that Petitioner's injury required a marked restriction of activities and that further spinal degeneration and progression of symptomology were inevitable.[2]

Petitioner sued for workers' compensation pursuant to the LHWCA[3] and his employer, Global, challenged jurisdiction and Petitioner's right to compensation. On February 27, 1996, following a three-day hearing and a complete review of Petitioner's medical record, ALJ Barnett found that (a) Petitioner met the status and situs requirements for jurisdiction under the LHWCA, and (b) Petitioner had been temporarily totally disabled for a period of several months and had sustained a permanent partial

_____

2. Indeed, Petitioner's back condition did continue to degenerate, and he underwent back surgery. Petitioner alleges he has been unable to work in any capacity since January 1999. Reply Brief for Petitioner at 2.

3. The LHWCA, 33 U.S.C. SS 901-50 (1994), is a workers' compensation statute that fixes disability benefits for maritime workers who are injured on the job.

3

disability. Accordingly, she awarded Petitioner medical benefits under the LHWCA. ALJ Barnett did not, however, award any compensation for lost wage ear ning capacity because Petitioner was then employed in another position for wages comparable to his pre-injury ear nings. As more fully explained in her Supplemental Decision and Or der of April 26, 1996, despite her finding that Petitioner's "serious back condition" was "likely to deteriorate and m[ight] cause loss of wage earning capacity in the futur e" and despite her awareness that "[s]ubstantial authority does exist for de minimis awards where, as here, there is proof of a present medical disability and a reasonable expectation of future loss of wage-earning capacity",4  because this circuit had not considered the issue, ALJ Barnett felt compelled to follow the Board's policy of disfavoring any de minimis award.5

On the issue of Petitioner's attorney's fees, ALJ Barnett directed counsel to submit a fully documented fee

_____

4. Supplemental Decision and Order of ALJ Barnett, April 26, 1996 (33a-34a) (citing La Faille v. Benefits Review Boar d, 884 F.2d 54 (2d Cir. 1989); Randall v. Comfort Control, 725 F.2d 791 (D.C. Cir. 1984); Hole v. Miami Shipyards Corp., 640 F.2d 769 (5th Cir. 1981)). These circuits each held that when a claimant has suffer ed a medical disability and there is a significant possibility that he will suffer future economic harm,
the purposes of the LHWCA are served by a nominal award expressly fashioned to preserve the claimant's right to future compensation. See also Rambo v. Director, OWCP, 81 F.3d 840, 843 (9th Cir. 1996), aff 'd, 521 U.S. 121 (1997) (agreeing with 2d, 5th and D.C. Circuits that "nominal awards may be used to preserve a possible future award where there is a significant physical impair ment without a present loss of earnings").

5. ALJ Barnett stated:

        This case, however, arises in the Thir d Circuit, which has evidently
        not considered the issue. The court is ther efore bound by the
        rulings of the Benefits Review Board, which disfavors de minimis
        awards (citations omitted).

The Board had repeatedly "expressed its dissatisfaction with de minimis awards of benefits," viewing them as "judicially-created" extensions on the time for modification, which "infring[e] upon the province of the legislature". Rambo v. Director, OWCP, 81 F.3d 840, 844 (9th Cir. 1996), aff 'd, 521 U.S. 121 (1997); see also LaFaille v. Benefits Review Board, 884 F.2d 54, 58 (2d Cir. 1989).

4

application. In her Supplemental Decision and Order she admonished the employer's counsel for requiring Petitioner to litigate every issue -- including jurisdiction, which should not have been contested -- and for turning the motions for fee awards into "a second major litigation."[6] After a complete review of the attorney's fee application, ALJ Barnett found that Petitioner prevailed on jurisdiction, disability, and the award of medical benefits;[7] she also observed that "[a] party cannot . . . litigate tenaciously and then be heard to complain about the time necessarily spent by opposing counsel in response."[8]  In a Second Supplemental Decision and Order issued on May 14, 1996, ALJ Barnett ordered the employer to pay directly to Petitioner's counsel the sum of $71,247.89 in fees and costs for his successful representation of Petitioner and $1,060 in fees and costs for defending his fee application.

Both the denial of a de minimis award and the award of attorney's fees were timely appealed and considered together. On February 26, 1997, the Board issued a Decision and Order in which it acknowledged that de minimis awards are appropriate where a claimant has established a "significant possibility of future economic harm as a result of the injury" but reasoned that "[a]s [ALJ Barnett]'s determination that claimant did not establish a significant possibility of future economic harm is supported by substantial evidence", it would "affirm the denial of a de minimis award."[9] On the issue of attorney's fees, the Board held that ALJ Barnett erred in failing to apply the Supreme Court's holding in Hensley v. Eckerhart , 461 U.S. 424 (1983), requiring that an attorney's fee award be commensurate with the degree of success obtained in the case. The Board concluded that although ALJ Barnett cited

_____

6. Supplemental Decision and Order of ALJ Barnett, April 26, 1996 (32a–33a).

7. As ALJ Barnett noted, the award of future medical benefits constitutes successful prosecution under Jackson v. Ingalls Shipbuilding Division, Litton Systems, Inc., 15 BRBS 299 (1983).

8. Supplemental Decision and Order of ALJ Barnett, April 26, 1996 (33a).

9. Decision and Order of February 26, 1997 (13a–14a).

Hensley, she "did not apply its holding in awarding an attorney's fee in excess of $71,000." The Board therefore vacated that award and remanded and r eassigned the case to ALJ Chapman10 with dir ections to adjust the fee award "after taking into account the limited results obtained in this case, specifically that only medical benefits, but no disability benefits, were awarded." 11

Twenty months later, in October, 1998, ALJ Chapman found that the number of hours reflected in the fee petition was reasonable, but reduced the hourly rates by one-third for lack of evidentiary justification that they were the prevailing rates for similar legal work in the area. She further reduced the lodestar figure by two-thirds in accordance with her conclusion that the awar d of future medical benefits represented "no mor e than one-third of the relief requested."12 Upon Motion for Reconsideration submitting evidence that the rates awarded by ALJ Barnett were the prevailing rates for attor neys with comparable experience, and challenging the reduction in the degree of success to one-third, ALJ Chapman denied that Motion but changed the rationale for her reduction in the rates. She concluded that (a) the rates were nonetheless unreasonable because the amount of time charged by counsel to this matter strongly suggested to ALJ Chapman that counsel lacked expertise and (b) because ALJ Barnett's"refusal to grant a de minimis award indicate[d] that she did not view the possibility of future economic harm .. . to be significant enough to overcome the Board's disfavor of such awards", counsel had achieved a relatively small portion of the relief requested.13

On January 28, 2000 the Board affirmed ALJ Chapman's fee reductions, holding that Petitioner failed to show any abuse of discretion and that Petitioner's "primary claim for

_____

10. The case was reassigned to the r ecently-appointed ALJ Chapman due to the death of ALJ Barnett.

11. Id. (14a).

12. Decision and Order of ALJ Chapman, October 23, 1998 (44a).

13. Decision and Order of ALJ Chapman on Motion for Reconsideration, January 11, 1999 (47a).

compensation" had been denied.14 At this time, the Board was also asked to revisit its denial of a de minimis award in light of the Supreme Court's decision in Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121 (1997).15 In a footnote, the Board replied that:

> Even though the Board did not rely on the Supreme Court's Rambo decision, which had not yet been issued, the Board used the "significant possibility of future economic harm" standard of the [underlying Ninth Circuit decision] . . . which is consistent with the standard used by the Supreme Court in its decision. While Judge Barnett's denial of a de minimis award may have been based on a determination that the . . . Third Circuit did not speak on the issue and the Board did not favor such awards, the Board, in affirming, relied on correct law.

Decision and Order of the Board, January 28, 2000 (7a).

II.

We exercise plenary review over the Board's interpretation of law and we also exercise plenary review to satisfy ourselves that the Board adhered to the statutory scope of review. Pennsylvania Tidewater Dock Co. v. Director, OWCP, 202 F.2d 656, 660 (3d Cir. 2000). 16 The Board must accept the ALJ's findings unless they are contrary to law, irrational or unsupported by substantial evidence in the record as a whole. See id.; see also O'Keeffe v. Smith Associates, 380 U.S. 359 (1965).17  It exceeds its authority

_____

14. Decision and Order of the Board, January 28, 2000 (6a-7a).
15. In Rambo, the Supreme Court held that an award of nominal compensation is proper where a worker has not suffered a current loss of earnings but "there is a significant possibility that the worker's wage-
earning capacity will fall below the level of his preinjury wages sometime in the future." 521 U.S. at 123.
16. See also Director, OWCP v.Barnes and Tucker Co., 969 F.2d 1524, 1526-27 (3d Cir. 1992); Bethenergy Mines, Inc. v. Director, OWCP, 39 F.3d 458, 463 (3d Cir. 1994).
17. See also Rambo v. Director, OWCP, 81 F.3d 840, 842 (9th Cir. 1996), aff 'd, 521 U.S. 121 (1997) (noting that Board decisions "are reviewed by the appellate courts for `errors of law and adherence to the substantial evidence standard' ") (quoting Metropolitan Stevedore Co. v. Brickner, 11 F.3d 887, 889 (9th Cir. 1993)).

when it makes independent factual determinations. See Director, OWCP v. U.S. Steel Corp. , 606 F.2d 53, 55 (3d Cir. 1979).18

In Rambo, the Supreme Court confir med that de minimis awards are appropriate where a claimant's "work related injury has not diminished his present wage ear ning capacity under current circumstances, but there is a significant potential that the injury will cause diminished capacity under future conditions." 521 U.S. at 138. The Court addressed the potential tension in such cases between the LHWCA's statutory mandate to account for future effects of disability in deter mining a claimant's wage-earning capacity (and thus entitlement to compensation) under 33 U.S.C. S 908(h) and its statutory pr ohibition against issuing any new order to pay benefits more than one year after compensation ends or an order is entered denying an award, see 33 U.S.C. S 922.19 It approved the reconciliation of these provisions pr eviously adopted by four of our sister courts of appeals, reading the LHWCA to authorize a present nominal award subject to later modification; and in so holding it rejected the Board's historic antipathy toward such awards. 20 Moreover, the Supreme Court approved the courts of appeals' standard of proof necessary to justify a nominal awar d, i.e., such compensation "should not be limited to instances where a decline in capacity can be shown to a high degr ee of statistical likelihood" but should be awar ded where "there is a significant possibility that a worker's wage earning

_____

18. See also Rambo, 521 U.S. at 139 (noting that "the ALJ is the factfinder under the Act") (citations omitted).

19. See 521 U.S. at 134 (noting that denying any compensation to a claimant who has no present earnings loss"would run afoul of the Act's mandate to account for the future effects of disability in fashioning an award, since . . . the 1-year statute of limitations for modification after
denial of compensation would foreclose r esponding to such effects on a wait-and-see basis as they might arise").

20. See 521 U.S. at 131-32 (concluding that "[t]o implement the mandate of S 8(h) . . . "disability" must be r ead broadly enough to cover loss of capacity . . . as a potential product of injury and market opportunities in the future").

capacity will at some future point fall below his preinjury
wages." 521 U.S. at 137.

It is clear from ALJ Barnett's decisions that she found
proof of a present medical disability and a reasonable
expectation of future loss of wage-earning capacity and that
her sole reason for denying a de minimis award was her
belief that the Board's prior decisions constrained her from
doing so. It is, therefore, equally clear that the Board erred
in recharacterizing ALJ Barnett's decision as a
"determination that claimant did not establish a significant
possibility of future economic harm" and was therefore not
entitled to a de minimis award. The ALJ made no such
determination; to the contrary, she reached precisely the
opposite conclusion. See April 26, 1996 Supplemental
Decision and Order (33a-34a) ("[H]er e, there is proof of a
present medical disability and a reasonable expectation of
future loss of wage-earning capacity".). Under the guise of
interpreting ALJ Barnett's decision, the Board has in effect
substituted its own contrary factual determination, in
contravention of our holding in U.S. Steel. 21

Because the Board misread ALJ Barnett's decision, it
never considered whether her actual finding –that the
standard for an award of de minimis benefits had been met
– was supported by substantial evidence. We find that ALJ
Barnett's original determination was supported by
substantial evidence in the record, including the testimony
of Petitioner's orthopedic surgeon to the ef fect that
Petitioner's condition would inevitably deteriorate. ALJ
Barnett reasonably inferred fr om the medical evidence that
there was at least a "significant possibility" that Petitioner
would at some future time suffer economic harm as a
result of his injury.

We are troubled by the Boar d's continued unwillingness
to uphold properly-supported nominal awar ds, in the face

_____

21. Cf. Hole v. Miami Shipyards Corp. , 640 F.2d 769, 773 (5th Cir. 1981)
(reinstating de minimis award and observing that "it is the duty of the
ALJ, not of the Board or of this court, to weigh the evidence and draw
reasonable inferences therefr om").

of clear direction from four courts of appeals and even the Supreme Court.[22]

Accordingly, we hold that, pursuant to thefindings made by ALJ Barnett and the direction of the Supreme Court in Rambo, Petitioner is entitled to a nominal award retroactive to September 1, 1991, the date he stopped receiving his regular salary from Global.[23]

III.

This appeal also requires us to review the Board's determination that, contrary to the decision of ALJ Barnett, Petitioner's counsel is entitled to only a significantly-reduced fee for legal services render ed.

The ALJ is given the responsibility of deter mining an appropriate attorney's fee award. On appeal, the Board's scope of review is limited; it "must uphold the ALJ's findings unless the ALJ applied the wrong legal standard or the ALJ's factual conclusions were not `supported by substantial evidence in the record considered as a whole.' " Pennsylvania Tidewater Dock Co. v. Dir ector, OWCP, 202 F.3d 656, 659 (3d Cir. 2000) (quoting 33 U.S.C. S 921(b)(3)). Substantial evidence " `means such r elevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. at 661 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Board may not r everse an ALJ's

_____

22. See Hole v. Miami Shipyards Corp. , 640 F.2d 769 (5th Cir. 1981) (reversing Board, which "exceeded its statutory authority in substituting its judgment" for ALJ's in vacating award based on ALJ's conclusion of significant probability that worker would suf fer some future economic harm as result of injury); LaFaille v. Benefits Review Board, 884 F.2d 54, 62 (2d Cir. 1989) (reversing ALJ and Board in concluding that where ALJ found a "progressive, obstructive lung disorder" which restricted claimant's ability to perform his for mer work, there was "substantial evidence that [claimant was] likely to suf fer a future loss of earnings as his condition deteriorate[d] or when his envir onment change[d]", entitling claimant to a de minimis periodic payment).

23. See Rambo v. Director, OWCP, 81 F.3d 840, (9th Cir. 1996),aff 'd, 521 U.S. 121 (1997) (reversing denial of benefits and remanding for entry of a nominal award).

award merely because it would have r eached a contrary conclusion. See, e.g., id. at 659.

ALJ Barnett presided over this entir e case and was in the best position to observe firsthand the factors af fecting her analysis of counsel's fee award. She was familiar with prevailing rates for successful claimant's attorneys in her District and was best able to assess the repr esentation and services rendered. Indeed, ALJ Bar nett expressly noted counsel's decades–long experience in maritime litigation, high standing, and "success in this matter despite the employer's tenacious defense by experienced counsel."[24] As these and other factors recited by ALJ Bar nett constitute substantial evidence supporting her determination as to the appropriateness of counsel's rates, that deter mination may not be disturbed on appeal.

ALJ Barnett's decision to award counsel's full fee – with no "limited success" reduction – was also supported by substantial evidence and, moreover, was in accordance with the Supreme Court's holding in Hensley v. Eckerhart, 461 U.S. 424 (1983). Under Hensley, the question is whether "the relief obtained justified that expenditure of attorney time." 461 U.S. at 435 & n. 11.[25] Petitioner here prevailed against his employer's strong contestation of jurisdiction, the extent of disability, and entitlement to futur e medical benefits. Indeed, by securing future medical benefits, counsel obtained a substantial benefit for Petitioner. Moreover, as discussed in Part II, Petitioner also prevailed as to the factual criteria for a de minimis award and he has now prevailed as to his legal entitlement on that score as well.

In determining the degree of success as compared to the overall purpose of the litigation,[26] ALJ Barnett felt that

_____

24. Supplemental Decision and Order of ALJ Barnett, April 26, 1996 (32a).
25. The Court specifically directs that the focus be "on the significance of the overall relief obtained by the plaintif f in relation to the hours reasonably expended on the litigation" and notes that it is not "necessarily significant that a prevailing plaintiff did not receive all the
relief requested."

26. See Hensley, 461 U.S. at 440 (directing that "[a] reduced fee award is appropriate if the relief . . . is limited in comparison to the scope of
the litigation as a whole").

11

Petitioner's counsel was entitled to the full award of fees. Although Petitioner did not succeed on every theory proffered, he did gain substantial benefit. ALJ Barnett noted that this was a complex case and required careful preparation; she reviewed each of 36 entries as to which specific objections were made and concluded that there was no basis for reduction. Because ALJ Barnett's decision was supported by substantial evidence and applied the correct legal standards, it should not have been disturbed. Neither the Board nor ALJ Chapman had a basis for substituting a different opinion from that of ALJ Barnett; to the contrary, the Board was required as a matter of law to uphold ALJ Barnett. Accordingly, the initial award of attorney's fees must be reinstated.[27] Moreover, to avoid further unnecessary litigation as to fees, we observe that Petitioner will be entitled to recover a reasonable attorney's fee for the present appeal as well.[28]

_____

27. Because we find that the Board erred in remanding ALJ Barnett's fee award for recalculation in the first place, it is unnecessary for us to address the propriety of ALJ Chapman's shifting rationales for reducing the rate of Petitioner's counsel's fee or of her across-the-board reduction
of the fee award. We note, however, the apparent injustice of applying a two-thirds reduction (against an already reduced rate) with respect to hours necessarily spent to establish jurisdiction, or on other issues that contributed to Petitioner's successful outcome. Penalizing a litigant for unsuccessful claims by reducing fees earned on successful claims could have a chilling effect on the willingness of counsel to advocate even meritorious positions in unsettled areas of the law. If the reduction in the present case were to stand, it might well be seen by the bar as a warning that counsel should not insist on rights secured under the law as interpreted by the Courts, when the Board has announced a contrary interpretation.

28. See Hole v. Miami Shipyards Corp., 640 F.2d 769, 774 (5th Cir. 1981) (observing that where employer contests its liability for compensation in whole or in part and claimant is ultimately successful, employer must pay claimant's attorney's fees for services necessary to that success, including fees for legal services rendered before tribunals deciding against him, as well as for claimant's successful prosecution of appeal to
Court of Appeals).

12

IV.

For the reasons set forth above, we will vacate the decisions and orders of the Board and r einstate ALJ Barnett's initial award of attorney's fees to Petitioner's counsel; we further remand this case for entry of a nominal disability award and for determination of an appropriate fee for this appeal.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit